# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ALASKA

In re:

CHRISTOPHER EUGENE WILLIAMS
and SHANNON RAE WILLIAMS,

                    Debtors.

Case No. A09-00745-DMD
Chapter 13

**Filed On
1/31/11**

## MEMORANDUM ON MOTION TO MODIFY PLAN

       The debtors have filed a motion to modify their confirmed chapter 13 plan. Their current plan provides that Alaska USA's claim, secured by an F-150 truck, will be paid in full over the life of the plan. Under the proposed plan modification, the debtors would surrender the vehicle to Alaska USA, leaving it with an unsecured deficiency claim. Alaska USA opposes the debtors' motion, arguing that its allowed secured claim cannot be treated this way in a postconfirmation plan modification. I find that the proposed modification of Alaska USA's secured claim is appropriate and allowable under the Bankruptcy Code. However, the debtors are in arrears on plan payments and there are some inaccuracies in the modified plan which must be corrected. Under such circumstances, the motion to modify cannot be granted.

Case Background

       The debtors filed for chapter 13 relief in October of 2009. Alaska USA had financed the debtors' purchase of a 2008 Ford F-150 truck in November of the previous year. The purchase price for the vehicle was $40,575.00. The debtors made a down payment of

$2,000.00, used a $7,000.00 rebate from Ford Motor Company, and were given a trade in allowance of $15,000.00 for a 2004 Mercedes-Benz when they bought the truck. However, the debtors still owed a sizeable amount on the Mercedes, and this negative equity, $12,786.97, was wrapped into the new loan Alaska USA issued when the F-150 was purchased. The debtors also purchased a service contract for $2,500.00. The total loan amount, including the negative equity, the service contract, and various dealer charges, was $48,111.97.

Alaska USA filed a secured claim for $44,065.00 in this bankruptcy proceeding. The debtors sought a cramdown of its secured claim. Their amended plan, filed February 18, 2010, valued the F-150 at $32,000.00 and proposed paying Alaska USA this sum in 60 payments of $629.00, including interest at the rate of 5.75% per annum.[1] The debtors also filed a motion to determine the value of the F-150.[2] They contended the negative equity in the car loan Alaska USA had extended them should be excluded from the amount of its secured claim, and that the secured claim should be limited to the actual value of the vehicle.

Alaska USA objected to the motion. It argued that its claim was not subject to cramdown under the "hanging paragraph" which had been tacked to the end of 11 U.S.C. § 1325(a) by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005

---

[1] Debtors' Amended Ch. 13 Plan, filed Feb. 18, 2010 (Docket No. 33), at 2.

[2] Mot. to Value Security Held by Alaska USA, filed Feb. 10, 2010 (Docket No. 29); Mem. in Supp., filed Feb. 10, 2010 (Docket No. 30).

("BAPCPA").[3]  I found Alaska USA's objection well taken and denied the debtor's valuation motion.[4]  The debtors amended their plan to provide for full payment of Alaska USA's claim as an allowed, unmodified, secured claim.[5]  Alaska USA was to receive 60 monthly payments of $847.00, with interest at the rate of 5.75% per annum. This plan was confirmed on May 25, 2010.

Five months after confirmation, on October 13, 2010, the debtors filed a motion to modify their plan.  Under the modified plan, the debtors intend to surrender the vehicle to Alaska USA and pay any deficiency claim as an allowed unsecured claim.  The modified plan will pay such claims a dividend of 3.5%.  The debtors say the vehicle is in "like new" condition.  They also say the surrender of the vehicle is necessary to free up their limited monthly income so they can cure postpetition arrears which occurred after Mrs. Williams had a baby and temporarily left the workforce.

Alaska USA objected to plan modification.  It notes that it held a fully secured claim for $44,000.00 when the debtor's plan was confirmed in May of 2010, by virtue of the "hanging paragraph," and contends the F-150 has now depreciated to a value range of

---

[3] The "hanging paragraph" has been referred to as 11 U.S.C. § 1325(a)(*).  *See Americredit Fin. Serv. v. Penrod (In re Penrod)*, 611 F.3d 1158, 1161 (9th Cir. 2010).

[4] The debtors would be more successful with their valuation argument today, in light of a recent Ninth Circuit decision holding that a secured creditor does not have a purchase money security interest in negative equity.  *Penrod*, 611 F.3d 1158.

[5] Amended Ch. 13 Plan, filed Apr. 23, 2010 (Docket No. 52), at 3.

3

between $23,175.00 to $30,175.00.[6]  It contends the debtors cannot modify an allowed

secured claim under 11 U.S.C. § 1329 to provide for surrender of the collateral to a secured

creditor and payment of a deficiency claim as a general unsecured claim.

Larry Compton, the chapter 13 trustee, also objected to the debtors' proposed

plan modification, but on different grounds.  One basis for objection has been cured, but two

remain: the debtors are in arrears on the payments to be made under the proposed modified

plan, and the modified plan is inaccurate and incomplete because it doesn't account for the

$11,000.00 in payments which the debtors have made under the confirmed plan, nor for the

$8,405.16 which the trustee has already disbursed to Alaska USA.

Discussion

11 U.S.C. § 1329(a) permits a debtor to seek modification of a chapter 13 plan

after confirmation.  The plan may be modified, on motion of the debtor, trustee, or holder of

an allowed unsecured claim to:

> (1)   increase or reduce the amount of
> payments on claims of a particular class provided
> for by the plan;

> (2)   extend or reduce the time for such
> payments;

> (3)  alter the amount of the distribution to
> a creditor whose claim is provided for by the plan

---

[6] When the debtors filed their motion to value security, roughly one year ago, they contended the
vehicle had a value of $32,000.00.  Assuming the vehicle is in "like new" condition, as asserted by the
debtors, the depreciation in value is not as alarming as it appears at first blush.

to the extent necessary to take account of any
payment of such claim other than under the plan.[7]

The requirements of § 1325(a) apply to plan modifications proposed under § 1329(a).[8]

Section 1325(a)(5) discusses a debtor's options for treatment of a secured claim under a

chapter 13 plan, and one such option is the surrender of the secured creditor's collateral.[9]

Alaska USA contends a debtor may only modify a plan under § 1329(a) to alter

the amount or timing of payments, and cannot use plan modification to surrender a secured

creditor's collateral, postconfirmation.  In support of its opposition, Alaska USA relies on

a Sixth Circuit decision, *Chrysler Financial Corp. v. Nolan, (In re Nolan).*[10]  The court in

*Nolan* dealt with facts similar to those present here.  A chapter 13 debtor moved to modify

her plan, postconfirmation, seeking to surrender a vehicle to the secured creditor and pay the

deficiency portion of the creditor's claim as a general unsecured claim.  After the bankruptcy

court granted the debtor's motion, the secured creditor appealed.  The Sixth Circuit noted that

there was a debate over whether 11 U.S.C. § 1329 permitted a debtor to modify a plan for

this purpose, with a "clear and fairly even split of authority amongst the federal district

courts."[11]  The court also noted that this was "an issue of first impression for the Courts of

---

[7] 11 U.S.C. § 1329(a)(1) - (3).  These subsections are in the disjunctive.  A fourth alternative found in § 1329(a)(4) is not applicable here.

[8] 11 U.S.C. § 1329(b)(1).

[9] 11 U.S.C. § 1325(a)(5)(C).

[10] 232 F.3d 528 (6th Cir. 2000).

[11] *Nolan*, 232 F.3d at 531.

5

Appeals."[12]  It concluded that the debtor could not modify her confirmed plan to provide for the surrender of collateral to a secured creditor.   Instead, § 1329(a) only permitted modification of a plan with respect to the timing or amount of payments to be made on a claim, and not modification of the total amount of the claim.[13]

As the court noted in *Nolan*, there is a split of authority on this issue.  In the Ninth Circuit, while there is no appellate court authority, the bankruptcy courts which have considered the issue have held that a debtor may modify a confirmed chapter 13 plan to provide for the surrender of collateral to a secured creditor.[14]  Collier has examined both lines of authority and agrees that this is the better reading of the Bankruptcy Code.[15]   After discussing *Nolan*, Collier states:

> Other courts have held to the contrary, based on a more careful and complete reading of the Code.   Typically, a secured claim is in a separate class from other claims, and section 1329(a)(1) specifically permits a modification to decrease the payments on claims in a particular class, i.e., to the amount already paid. Section 1329(a)(3), which the Nolan court did not consider, provides that the "amount of the distribution to a creditor" may be modified to "take into account any payment of such claim other than under the plan."  Thus, a reduction of

---

[12] *Id.*

[13] *Id.* at 535.

[14] *See In re Ward*, 348 B.R. 545 (Bankr. D. Idaho 2005); *In re Mason*, 315 B.R. 759 (Bankr. N.D. Cal. 2004); *In re Zeider*, 263 B.R. 114 (Bankr. D. Ariz. 2001); *In re Odlin*, 2010 WL 3791486 (Bankr. D. Or. 2010); *In re Berendt*, 2008 WL 4410995 (Bankr. D. Or. 2008) (Unpublished Letter Decision).

[15] 8 COLLIER ON BANKRUPTCY ¶ 1329.04[1] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.)

6

the amount owed to a creditor may be the basis for a modification that has the effect of changing the amount or classification of a claim after confirmation. Further, section 502(j) permits a court to reconsider a claim for cause, and under Federal Rule of Bankruptcy Procedure 3008, the court may allow or disallow a claim, increase or decrease the amount of a prior allowance, accord the claim a different priority or enter any other appropriate order. Contrary to the *Nolan* court's conclusion, a claim may be altered after confirmation, a secured claim may be reclassified as unsecured and section 1329 permits modification of the amount of payments on such claim. If there were no way to modify a plan to take into account such a reconsideration, the debtor could be required to make payments on a claim in excess of the amount of the claim or in excess of the percentage paid to other similar claims.

Moreover, section 1329(b) specifically makes applicable to postconfirmation modifications the provisions of section 1325(a), including subsection (a)(5). If there were no possibility under section 1329(a)(1) of altering the amount paid to a secured creditor or the debtor's choice to retain the collateral, there would be no need to import the standards of section 1325(a)(5), which govern only those issues. . . .[16]

Collier also notes that, although § 1325(a)(5) was amended by BAPCPA to provide some

additional protections to secured creditors in chapter 13 cases and resolve conflicting case

law, Congress chose not to adopt the holding of the *Nolan* case.[17]

---

[16] *Id.* at 1329-9 - 10 (citations omitted).

[17] *Id.* at 1329-10 - 11.

7

I agree with Collier and the decisions of the bankruptcy courts within the Ninth Circuit which have considered this issue.  Chapter 13 debtors may, postconfirmation, modify their plan to provide for the surrender of collateral to a secured creditor and the payment of any deficiency as a general unsecured claim, provided they are proceeding in good faith. Here, Alaska USA says the debtors have given "lip service" to the issue of good faith, because the pregnancy "could have hardly been an unforseen event."[18]  Alaska USA feels the debtors' explanation as to why they fell behind on their mortgage and plan payments, i.e., the birth of their child and Mrs. William's temporary withdrawal from the workforce, "is dubious at best."[19]  I disagree.  There is nothing in the record to contradict the debtors' explanation, and the reasons they have given for their delinquency in plan and mortgage payments are common ones which are not indicative of bad faith.  The debtors have not misrepresented facts, unfairly manipulated the Bankruptcy Code, or otherwise proceeded in an inequitable manner.[20]  Instead, it appears the debtors are in an unenviable position where they may lose their home if they are forced to continue making payments on the F-150.[21]

---

[18] Alaska USA's Opp. to Debtors' Mot. to Modify Ch. 13 Plan, filed Nov. 3, 2010 (Docket No. 72), at 5-6.

[19] *Id.*

[20] *Goeb v. Heid (In re Goeb)*, 675 F.2d 1386, 1390 (9th Cir. 1982).

[21] A similar factual situation was present in *Bank One, N.A. v. Leuellen (In re Leuellen)*, 322 B.R. 648 (S.D. Ind. 2005).  The district court, after a very thorough and well-reasoned analysis, concluded the debtors could modify their chapter 13 plan, postconfirmation, to surrender a vehicle to the secured creditor and pay any deficiency as an unsecured claim, rather than be forced to complete the original plan, which provided that the debtors would retain the vehicle and pay the secured creditor's claim in full.

8

Additionally, the debtors say the vehicle is in "like new" condition,[22] and Alaska USA has already been paid $8,405.16 on its secured claim under the confirmed plan. Further, the debtors seek a remedy, through plan modification, which would have been available to them preconfirmation: surrender of the vehicle in satisfaction of Alaska USA's secured claim.[23] This simply is not a bad faith situation.

The debtors can amend their plan, under § 1329(a), to provide for surrender of Alaska USA's collateral and the payment of any deficiency claim as a general unsecured claim. However, the chapter 13 trustee has pointed out that the proposed modified plan has deficiencies which should be corrected: 1) the modified plan doesn't include the $11,000.00 in payments the debtors have already made to the trustee; and 2) the modified plan doesn't account for the payments the trustee has already made to Alaska USA, totaling $8,405.16. These deficiencies must be corrected before the modified plan can be confirmed. For this reason, the motion to modify plan will be denied, without prejudice to renewal once the deficiencies noted by the trustee have been corrected.

DATED: January 31, 2011.

BY THE COURT

/s/ Donald MacDonald IV
DONALD MacDONALD IV

---

[22] *Compare In re Odlin*, 2010 WL 3791486 (Bankr. D. Or. 2010). The debtor's motion to modify plan was denied because she requested the modification more than two years after plan confirmation, the vehicle had been "trashed" and was no longer insured, and its value at the time modification was requested was just $500.00.

[23] 11 U.S.C. § 1325(a)(5)(C).

9

United States Bankruptcy Judge

Serve:      C. Johansen, Esq.
            W. Dawson, Esq.
            L. Compton, Trustee
            U. S. Trustee


      01/31/11